UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **JAMES TYSON**, <br><br> *Plaintiff,* <br><br> v. <br><br> **SODEXO, INC.,** <br> 1000 Colonial Farm Road <br> McLean, Virginia 22101 <br><br>  **SERVE**: <br>  c/o Registered Agent <br>  Corporate Creations Network, Inc., <br>  425 W. Washington St., Suite 4 <br>  Suffolk, VA 23434-5320 <br><br> **SDH SERVICES WEST, LLC**, <br> 9801 Washington Blvd. <br> Gaithersburg, Maryland 20878 <br><br>  **SERVE**: <br>  c/o Registered Agent <br>  Corporate Creations Network, Inc., <br>  425 W. Washington St., Suite 4 <br>  Suffolk, VA 23434-5320 <br><br> *Defendants.* | Civil Action No.  1:23-cv-437 <br><br> (JURY TRIAL REQUESTED) |

## COMPLAINT

NOW COMES the Plaintiff, JAMES TYSON (hereinafter, "Tyson" or "Plaintiff"), through his undersigned counsel of record, and files this Complaint for Damages against Defendants, Sodexo, Inc. and SDH Services West, LLC (hereinafter collectively known as "Sodexo" or "Defendants") on the following grounds:

1

1. This action is brought by Plaintiff for damages against Defendants for discrimination on the basis of sex, disability, and retaliation for Plaintiff's prior protected activity in violation of: (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* and the Americans with Disabilities Act, 42 U.S. Code § 12101 *et seq.* (ADA).

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over Tyson's claims arising under Title VII and the ADA pursuant to 28 U.S.C. § 1331, because those claims arise under the laws of the United States.

3. This Court has personal jurisdiction over Sodexo because, upon information and belief, it is a citizen of the United States, has sufficient minimum contacts in Virginia, and/or otherwise intentionally availed itself of the Virginia market so as to render the exercise of jurisdiction over it by the Federal and Virginia courts consistent with traditional notions of fair play and substantial justice.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all of the events, acts, and/or omissions giving rise to Plaintiff's claims occurred in the Commonwealth of Virginia. Specifically, Tyson was employed by Sodexo at a location in this judicial district; and the unlawful employment practices and decisions adverse to Tyson's employment which are the basis of this civil action took place in this judicial district.

## PARTIES

5. James Tyson is a citizen of the United States who currently resides in Virginia. Tyson submits himself to the jurisdiction of the United States District Court for the Eastern District of Virginia for all purposes related to or arising from the action within.

6. At all times relevant to the facts alleged in this lawsuit, Tyson was employed by Sodexo.

7. Defendant SDH Services West LLC is a fully owned subsidiary of Sodexo, Inc. and is commonly referred to as "Sodexo." Defendants are Delaware corporations with headquarters in Maryland, but provide services in many states, including in the Commonwealth of Virginia. Specifically, Defendants conduct business operations at the headquarters of the Central Intelligence Agency located at 1000 Colonial Park Road, McLean, VA.

8. Defendants, including its supervising personnel, officials, agents, officers, and employees, were responsible for all acts complained of herein.

## ADMINISTRATIVE PROCESS

9. Tyson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 22, 2022.[1]

10. After more than 180 days, the EEOC issued Tyson a Right to Sue Letter on or about January 4, 2023. See EEOC Notice of Right to Sue (see attached **Exhibit 1**). Accordingly, Mr. Tyson has satisfied all administrative prerequisites for bringing this action.

11. Tyson's suit is timely filed with this Court.

## STATEMENT OF FACTS

---

[1] In its EEOC position statement, SDH Services West argued that Mr. Tyson was terminated on April 27, 2021, which would make the 300th day February 21, 2022. However, February 21, 2022, was Presidents' Day, a federal holiday. Accordingly, even if Mr. Tyson was terminated on April 27, 2021, a timely charge of discrimination would have to be filed by the next business day, Tuesday, February 22, 2022. See, e.g., *Gerald v. Mann & Hummel*, No. 4:20-CV-2556-CMC-KDW, 2021 WL 1394728, at *3 (D.S.C. Feb. 9, 2021) (calculating the deadline to file a timely charge of discrimination as February 19, 2019, because the 300th day fell on February 18, 2019, which was Presidents' Day).

12. In or around October 2020, Mr. Tyson received a call from Sonia Hora (Sodexo Human Resources Manager) regarding a vacancy for a Director of Facilities at their Central Intelligence Agency ("CIA") location. Ms. Hora previously worked with Mr. Tyson, and she was familiar with his hard work and expertise.

13. Ms. Hora insisted that this would be a great opportunity for Mr. Tyson that would potentially lead to a permanent position as a CIA employee after obtaining his security clearance. Mr. Tyson hesitated as he was an extremely successful employee at the Rose Company. However, after a few phone calls from Ms. Hora, Mr. Tyson agreed to interview for the position.

14. In or about October 2020, Mr. Tyson had an interview with Ms. Hora and Daphne Miles (Area General Manager). On November 9, 2020, Mr. Tyson began the position as Director of Facilities. His position was located within the CIA headquarters in McLean, Virginia.

15. In his role as Director of Facilities, Mr. Tyson oversaw a staff of engineers at sixteen federal government facility cafes. He was responsible for ensuring all kitchen apparatus were being maintained and cleaned properly, in order to get the best quality usage out of the equipment.

16. Mr. Tyson suffers from permanent brain damage from his prior boxing career. Ms. Hora was aware of his past career and disability. While working together at LSG Sky Chefs, Mr. Tyson provided a letter from Dr. Michael Batipps at Washington Hospital Center regarding his medical condition. Upon information and belief, Ms. Hora shared that information with Ms. Miles soon after Mr. Tyson was hired.

17. Immediately after Mr. Tyson began his employment, Ms. Miles made Mr. Tyson feel uncomfortable, talked down to him, and screamed at him on a regular basis.

18. In or around January 2021, Mr. Tyson was in Ms. Miles' office with Aria Taylor (Safety Manager). Ms. Miles was discussing a task and said, "James, didn't I go over this with you before?" Mr. Tyson explained that they had not previously discussed the task and Ms. Miles exclaimed, "Yes I did!" Ms. Miles continued to scream at Mr. Tyson, "you need to be an adult" and "you're less of a man". Afterwards, Ms. Taylor apologized to Mr. Tyson for the way Ms. Miles spoke to him. Ms. Miles did not treat female employees or employees with disabilities in this manner.

19. Mr. Tyson reached out to Ms. Hora and Steve Queen (District Manager) regarding Ms. Miles' treatment of him. Ms. Hora chuckled, smiled, and said, "you guys are just going to have to work it out." Mr. Queen also suggested that Mr. Tyson should "just try to work with her" because he needed both of them. Unfortunately, Ms. Miles was unwilling to change her behavior toward Mr. Tyson.

20. Mr. Tyson reported Ms. Miles' behavior to Ms. Hora on multiple occasions. Ms. Hora suggested that Mr. Tyson "let it go."

21. On March 24, 2021, Chef Joshua Bonime reported to Mr. Tyson that a grill was popping, and flames were coming out. Mr. Tyson and one of his engineers (Edgardo Colin) went to assess the situation. Chef Bonime notified them that he had also called building maintenance. Mr. Tyson reported the incident to Ms. Miles and explained that a cook had been throwing water on top of the electrical flat top to clean it without shutting the power off and water was getting down into the electrical wirings. Ms. Miles responded in a demeaning tone, "James, stop right there! Don't you think that the company who built that grill would think better than that? To ensure that water won't get down in there?" Humiliated, Mr. Tyson further explained that he spoke with

the cook, she described how she was cleaning the grill, and that water was getting into the electrical; however, he would go back to the grill and continue to evaluate the situation.

22.     Back at the grill, Mr. Tyson reported to the electricians, who had been called to assess the situation, that a cook had been throwing an entire bucket of water on top of the grill to clean it. He further directed their attention to the electrical wires coming out of the knobs with the main power right next to it which was causing the sparks. The electricians confirmed Mr. Tyson's assessment.

23.     One of the electricians went to speak with Ms. Miles to explain the diagnosis. Ms. Miles refused to listen to him, sent him away and shouted at Mr. Tyson to go into her office.

24.     In her office, Ms. Miles raised her voice with Mr. Tyson. She yelled, "James, whose fucking team are you on!? What are you doing?" Mr. Tyson said that they all work together, and she responded, "What are you doing? James, I don't want to talk to you. Get the hell out of my fucking office now!"

25.     Approximately twenty CIA employees were standing at or near her door and witnessed Ms. Miles berating Mr. Tyson. Upset by Ms. Miles' behavior, Mr. Tyson left the building. When he got to his vehicle, he contacted Mr. Queen and explained what had occurred. Mr. Queen said he, Ms. Hora, Mr. Tyson, and Ms. Miles would meet the following day to discuss the matter.

26.     The next day, late in the afternoon, Mr. Queen called Mr. Tyson to his office. Ms. Hora was in attendance; however, Ms. Miles was not present. Mr. Queen stressed to Mr. Tyson that he needs both Mr. Tyson and Ms. Miles on his team. He told Mr. Tyson that he does not want Mr. Tyson to discuss the matter, because he (Mr. Queen) and Ms. Hora could get written up if the

complaints escalated to Mr. Queen' boss. Mr. Queen said that neither of them would be happy if that occurred.

27. Mr. Tyson informed Mr. Queen and Ms. Hora that he did not feel comfortable working with Ms. Miles because she constantly talked down to him and cursed at him in front of his colleagues. Mr. Tyson would turn around every time he saw Ms. Miles heading in his direction. He was shaken and frightened that she was going to start screaming and yelling at him. Mr. Queen told him he was just going to have to deal with it. Ms. Hora instructed Mr. Tyson to just let this go. Mr. Tyson notified Mr. Queen and Ms. Hora that he was going to report the matter to EEO, and he had already been seeking counsel. Mr. Queen replied, "James, seriously. When you leave this office, do not speak to it, do not speak to anybody about this incident, and don't ever bring it up again."

28. For the next month, Mr. Tyson stayed as far away from Ms. Miles as he could. He was humiliated by her. To avoid the judgmental glances and comments from coworkers, he stayed in his office as much as possible.

29. On April 28, 2021 (around 6:00 p.m.), Mr. Queen and Ms. Hora called Mr. Tyson. Mr. Queen said that they were reaching out to Mr. Tyson because Mr. Tyson had spoken to HR relations at headquarters. Mr. Tyson denied speaking with anyone at HR Relations. Mr. Queen insisted that Mr. Tyson had a conversation earlier that day with an HR Relations employee at headquarters. Mr. Queen reported that this individual was his (Mr. Queen's) boss and that Mr. Tyson had given HR his resignation." Mr. Tyson explained that he never spoke to HR, and he did not submit his resignation.

30. Mr. Tyson requested the audio from the alleged call to HR. Mr. Queen laughed and said, "This is the way it goes. You gave two weeks' verbal, and we accepted your resignation." Mr.

Tyson called out Ms. Hora's name as she was supposed to be in the phone conversation as a witness to the call; however, she never responded. Mr. Queen then disconnected the call.

31. Mr. Tyson attempted to call Mr. Queen back; however, he did not answer or return Mr. Tyson's calls. Mr. Tyson later received a letter in the mail dated April 28, 2021, stating, "the Company has accepted your resignation given during your call on April 27, 2021, with Employee Relations Services. Please be advised that your separation will be processed as a Resignation in Lieu of Termination due to your egregious misconduct during our call that violated CP-101, Ethical Conduct Policy and CP-201, Sexual and Other Prohibited Harassment."

32. Mr. Tyson has since been denied job opportunities after reference checks with Sodexo.

**COUNT I**
**DISPARATE TREATMENT**
**SEX DISCRIMINATION**
**[Title VII, 42 U.S.C. § 2000e, *et seq.*]**

33. Tyson repeats, re-alleges, and hereby incorporates each preceding paragraph, as though set forth fully herein.

34. Title VII of the Civil Rights Act of 1964 states that it "shall be an unlawful employment practice for an employer— ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S. Code § 2000e–2(a)(1).

35. Sodexo was and continues to be an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

36. Mr. Tyson was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f).

8

37. Mr. Tyson is male and a member of a protected class.

38. On or about April 28, 2021, Mr. Tyson received a call from Mr. Queen claiming they were accepting his resignation. Prior to this call, Mr. Tyson had not spoken with anyone at HR Relations and had not tendered his resignation. On the contrary, Sodexo terminated Tyson's employment on April 28, 2021.

39. Defendants' decision to terminate Mr. Tyson was based, at least in part, on his sex.

40. By terminating Tyson on April 28, 2021, Sodexo intentionally deprived Tyson of equal employment opportunities, and otherwise adversely affected his status as an employee, in violation of 42 U.S.C. § 2000e-2, and, in so doing, willfully violated Tyson's federally protected rights.

41. As a direct, proximate, and foreseeable result of Sodexo's unlawful conduct, Tyson has suffered, and will continue to suffer, a loss of wages and salary, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

42. As a direct, proximate, and foreseeable result of Sodexo's unlawful conduct, Tyson has suffered, and will continue to suffer, physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

43. As a result of Sodexo's unlawful conduct as alleged herein, Tyson is entitled to reasonable attorneys' fees and costs of the suit as provided for by applicable law.

## COUNT II
## HOSTILE WORK ENVIRONMENT BASED ON SEX
**[Title VII, 42 U.S.C. § 2000e, *et seq.*]**

44. Tyson repeats, re-alleges, and hereby incorporates each preceding paragraph, as though set forth fully herein.

45. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) makes it unlawful to discharge or otherwise discriminate against any individual based on sex with respect to compensation, terms, conditions, or privileges of employment.

46. Defendants are and continues to be an "employer" within the meaning of Title VII.

47. Plaintiff was an "employee" within the meaning of Title VII.

48. Plaintiff is male and a member of a protected class.

49. Sodexo's employees repeatedly subjected Tyson to unwelcome harassment regarding the terms and conditions of his employment.

50. Sodexo, through its employees and supervisory agents, took the following actions to harass Tyson and create a hostile work environment: (1) made offensive comments to Tyson which were based on his sex (such as "you're less of a man"); (2) made him feel uncomfortable, talked down to him, and screamed at him on a regular basis; and (3) terminated his position on April 28, 2021.

51. Tyson's supervisors and colleagues engaged in offensive and harassing conduct toward him from January 2021 through the date Sodexo terminated his employment on April 28, 2021.

52. Sodexo's harassing behavior towards Tyson was so severe and pervasive that it altered the terms and conditions of Tyson's employment and created a discriminatory and abusive working environment.

53. The harassment to which Tyson was subjected was so severe and pervasive that some of Tyson's colleagues found the harassment to be offensive.

54. Tyson repeatedly complained to Sodexo about the harassment and hostile work environment, but Tyson's complaints were ignored. If fact, he was told to "let it go",

55. Sodexo failed to take the appropriate remedial and corrective action as required by Title VII, including properly disciplining Tyson's supervisors, and preventing further harassment of Tyson by his colleagues.

56. Defendants allowed Ms. Miles to continuously display aggression and make negative comments about Plaintiff in front of other employees—damaging his ability to effectively manage his work and achieve success.

57. Defendants allowed Ms. Miles to continue unchecked and made Plaintiff's work environment uncomfortable and unwelcome for any reasonable person.

58. Defendants and their management staff refused to listen to or investigate Plaintiff's complaints of sex discrimination.

59. Defendants subject Plaintiff to adverse and different terms and conditions of employment than his female counterparts.

60. As an actual and proximate cause of Defendants' conduct, Plaintiff has suffered physical injury, emotional distress, embarrassment, humiliation, and lost wages and benefits.

61. As a result of Sodexo's unlawful actions, Tyson is entitled to monetary and nonmonetary damages for severe emotional distress, mental anguish, and humiliation.

## COUNT III
## RETALIATION
## [TITLE VII]
## [Title VII, 42 U.S.C. § 2000e, *et seq.*]

62. Tyson repeats, re-alleges, and hereby incorporates each preceding paragraph, as though set forth fully herein.

63. Title VII states that it is unlawful "for an employer to discriminate against any of his employees …, because he has opposed any practice made an unlawful employment practice by

11

this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S. Code § 2000e–3.

64. Tyson made multiple complaints to Ms. Hora and Mr. Queen regarding Ms. Miles' discriminatory behavior.

65. Defendants and their management staff refused to listen to or investigate Plaintiff's complaints of sex discrimination. Tyson's reports were ignored, and/or he was told to "let it go" because they all needed to work together.

66. On April 28, 2021, Sodexo terminated Tyson's employment. By the acts and omissions alleged above, Sodexo intentionally deprived Tyson of equal employment opportunities, and otherwise adversely affected his status as an employee, and, in so doing, willfully violated Tyson's federally protected rights.

67. As a direct and proximate result of the foregoing violations of Title VII, Tyson has suffered, and will continue to suffer, a loss of wages and salary, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

68. As a direct, proximate, and foreseeable result of Sodexo, N.A.'s unlawful conduct, Tyson has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

69. As a result of Sodexo's unlawful conduct as alleged herein, Tyson is entitled to nominal, compensatory, and punitive damages to compensate him for harm inflicted by Defendants. Plaintiff seeks back pay with pre and post judgment interest, front pay, reimbursement

for lost benefits, compensation for emotional distress, and repayment of his attorneys' fees and litigation costs and expenses.

**COUNT IV**
**DISABILITY DISCRIMINATION**
**[ADA, 42 U.S. Code § 12101** *et seq.***]**

70. Tyson repeats, re-alleges, and hereby incorporates each preceding paragraph, as though set forth fully herein.

71. The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to … the hiring, advancement, or discharge of employees, … and other terms, conditions, and privileges of employment." 42 U.S. Code § 12112(a).

72. The ADA also states that "the term 'discriminate against a qualified individual based on disability' includes— … not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability…" 42 U.S. Code § 12112(b)(5)(a).

73. Prior to his employment, Tyson suffered from a brain injury.

74. At all relevant times, Plaintiff was a person with a disability.

75. At all times relevant, Defendants had notice of Plaintiff's disability.

76. Sodexo, through its employees and supervisory agents, took the following actions to harass Tyson and create a hostile work environment: (1) made offensive comments to Tyson which were based on his disability (such as, "you need to be an adult", "didn't I go over this with you before?", "who's fucking team are you on?", and "What are you doing?"); (2) made him feel uncomfortable, talked down to him, and screamed at him on a regular basis; and (3) terminated his position on April 28, 2021.

77. At the time of Tyson's discharge, he was performing his job at a successful level.

78. Sodexo unlawfully discriminated against Tyson by terminating his and/or denying him continued employment on the basis of disability.

79. Sodexo's actions as set forth above constitute violations of the ADA and have caused Tyson to suffer damages.

**COUNT V**
**DISABILITY RETALIATION**
**[ADA, 42 U.S. Code § 12101 *et seq.*]**

80. Tyson repeats, re-alleges, and hereby incorporates each preceding paragraph, as though set forth fully herein.

81. The ADA states that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

82. The ADA further states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed…any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

83. Tyson made reasonable complaints about disability discrimination.

84. Sodexo took adverse employment action against Tyson by attempting to intimidate Tyson. Then Sodexo terminated him when he continued to complain about Ms. Miles' actions, while other employees, who did not have disabilities or records of disabilities or were not regarded as having disabilities, were allowed to continue their employment at Sodexo.

85. Sodexo unlawfully retaliated against Tyson by terminating his employment on April 28, 2021, in violation of the ADA, 42 U.S.C. §§ 12203(a)(b).

86. By the acts and omissions alleged above, Sodexo intentionally deprived Tyson of equal employment opportunities, and otherwise adversely affected his status as an employee, and, in so doing, willfully violated Tyson's federally protected rights.

87. As a direct and proximate result of the foregoing violations of the ADA, Tyson has suffered, and will continue to suffer, a loss of wages and salary, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

88. As a direct, proximate, and foreseeable result of Sodexo's unlawful conduct, Tyson has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

89. As a result of Sodexo's unlawful conduct as alleged herein, Tyson is entitled to reasonable attorneys' fees and costs of the suit as provided for by applicable law.

## COUNT VI
## FAILURE TO ACCOMMODATE
### [ADA, 42 U.S. Code § 12101 *et seq.*]

90. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

91. The ADA states that "the term 'discriminate against a qualified individual on the basis of disability' includes— ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability..." 42 U.S. Code § 12112(b)(5)(a).

92. At all relevant times, Plaintiff was a person with a disability.

93. At all times relevant, Defendants had notice of Plaintiff's disability.

94. Ms. Miles made offensive comments to Tyson which were based on his disability (such as, "you need to be an adult", "didn't I go over this with you before?", "who's fucking team are you on?", and "What are you doing?"); and (2) made him feel uncomfortable, talked down to him, and screamed at him on a regular basis. Plaintiff reported these comments to Ms. Hoda, who was aware of Mr. Tyson's disability. If Defendants believed that Plaintiff was unable to remember instructions or keep up with tasks, Defendants should have engaged in the interactive process with Plaintiff to determine whether accommodation was necessary.

95. Defendants took adverse employment action against Plaintiff by terminating Plaintiff's employment rather than engage in the interactive process.

96. Defendants unlawfully discriminated against Plaintiff by terminating him, at least in part, on the basis of disability.

97. Defendants' actions as set forth above constitute violations of the ADA and have caused Plaintiff to suffer damages.

98. Plaintiff seeks nominal, compensatory, and punitive damages to compensate him for harm inflicted by Defendants. Plaintiff seeks back pay with pre and post judgment interest, front pay, reimbursement for lost benefits, compensation for emotional distress, and repayment of his attorneys' fees and litigation costs and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, James Tyson, respectfully requests that this Honorable Court enter judgment in his favor on all Counts of his Complaint and against Defendants Sodexo, Inc. and SDH Services West, LLC, and that he be awarded the following relief:

(a) Entry of judgment in favor of Plaintiff on all Counts;

(b) Award of back pay for Plaintiff against Defendants;

(c) Award of compensatory damages for Plaintiff against Defendants;

(d) Award of punitive damages for Plaintiff against Defendants for its willful disregard of Plaintiff's federally protected rights under Title VII and the ADA;

(e) Award of reasonable attorneys' fees and litigation costs and expenses for Plaintiff against Defendants;

(f) Award of pre and post judgment interest for Plaintiff;

(g) Reinstate Plaintiff into the position he occupied at Sodexo, Inc., and SDH Services West, LLC at the time of his termination of employment;

(h) In the alternative to reinstating Plaintiff, award Plaintiff front-pay for the period of time the Court deems just and appropriate in order to provide Plaintiff adequate time to secure comparable employment; and

(i) Any other relief that this Court deems equitable, appropriate, and just.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

*/s/Francisco E. Mundaca*
Francisco E. Mundaca (VSB #96073)
THE SPIGGLE LAW FIRM, P.C.
3601 Eisenhower Ave., Suite 425
Alexandria, Virginia 22304
Phone: (202) 449-8527
Facsimile: (202) 517-9179
Email: fmundaca@spigglelaw.com